**GARY S. VILLANUEVA**
ATTORNEY-AT-LAW
11 Park Place, Suite 1601
New York, New York 10007
(212) 219-0100
-------------
Fax (212) 219-3701

August 2, 2024

<u>By ECF</u>

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, N.Y. 11201

    RE: <u>United States v. Say-Quan Pollack</u>
         Criminal Docket No. 22-CR-428(WFK)

Dear Judge Kuntz:

  I.   Introduction

Pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, this sentencing memorandum is submitted on behalf of Mr. Say-Quan Pollack, who is scheduled to be sentenced on August 13, 2024. Mr. Pollack has accepted responsibility for his actions and respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. 18 U.S.C., Section 3553(a)

In striking this balance, Say-Quan asks that the Court take into consideration his history and characteristics, which are marred by parental abandonment and neglect. The family's lack of financial resources led to instability and repeated homelessness. Impoverished and unhoused, the family moved from shelter to shelter, resulting in Say-Quan's prolonged absences from school and placement, along with his sister, into the foster care system.

Despite this troubled start and other missteps along the way, Say-Quan had turned the corner in his life. As more fully discussed below, days before his arrest, Say-Quan was accepted into a selective under-water welding program, operated under the auspices of the Ultimate Diver Program of the Ocean Corporation. See, Factors Warranting a Non-Guideline Sentence, infra at 4.

The Honorable William F. Kuntz, II
Page 2

II. Procedural History

Since his arrest on September 28, 2022, Say-Quan has remained in custody. On November 14, 2023, pursuant to a written plea agreement, entered a guilty plea to Count Two of a three count indictment in violation of 18 U.S.C. 1951(a). This results in a offense level of 24 carrying a range of imprisonment of 63 -78 months.

III. Offense Conduct

On July 24, 2022, The Leaders of Tomorrow, a place of worship founded by Pastor Bishop Lamor Whitehead, was robbed during one of its weekly services. Jewelry and personal items were removed from Bishop Whitehead and his wife. Whitehead was later indicted, convicted and sentenced in the Southern District of New York based on a series of frauds, including defrauding a church parishioner, lenders, and attempting to defraud a businessman, attempting to extort a businessman as well as lying to federal agents.

IV. Background

Say-Quan Pollack's life begins in deprivation and neglect. His father abandoned him as a child. Say-Quan has had no further contact with his father and is not aware of his circumstances. Without emotional or financial support, Say-Quan's mother has barely functioned as a single parent while fighting a life-long battle to overcome an addiction to alcohol. This struggle has affected every aspect of her life and the lives of her children. She was unable to maintain employment which left the family dependent on government assistance programs. PSR at 36. The family experienced unstable housing and was often evicted, cycling in and out of temporary shelters. This disrupted Say-Quan's socialization and had a devastating impact on his early education. Unable to regularly attend school, Say-Quan suffered academically and socially, ridiculed for having to repeat grades. PSR at 39.

Say-Quan's school absences were so severe that Child Protective Services removed him and his sibling from the mother's care. Initially, he was placed with a maternal aunt. However, she was unable to care for Say-Quan and his sister, as well as his other siblings from his mother's other relationships. Afterwards, Say-Quan and his sister were separated and placed with different families in the foster care system. At this time, Say-Quan was just eleven years old when separated from his mother, his sister, his other siblings and his aunt. PSR at 40.

The Honorable William F. Kuntz, II
Page 3

Although Say-Quan did not suffer abuse or neglect during his years in foster care, he expresses that he never felt truly loved by the families with whom he was placed. He was eventually placed in the home of Constance Mahomes with whom he stayed until he aged out of foster care. He formed a close bond with her and they continue to maintain a strong and supportive relationship. Ms. Mahomes is aware of this matter and remains caring and compassionate toward Say-Quan. When interviewed for the Pre-sentence report, she described Say-Quan as a "wonderful" and "outgoing young man" who is determined to move past the mistakes he has made in his life. PSR at 41. While in her care, Say-Quan followed the rules of her house and was respectful and obedient. After Say-Quan returned to live with his grandmother, Ms. Mahomes maintained an open-door policy for him. She has been a positive and consistent influence in Say-Quan's life. Her impressions are insightful. She shares that Say-Quan, like most children, only wanted his family to be together and has struggled with his relationship with his mother arising from the adverse consequences of her addiction. PSR at 41.

Say-Quan is single and has not fathered any children. This is an intentional act, borne out of his painful exposure to parental abandonment and neglect. It is also a mature decision that demonstrates his determination to become a better parent for his children than his parents were for him. PSR at 42.

Though Say-Quan notes difficulty in communicating with his mother due to her ongoing struggle with alcohol addiction, he strives to stay in touch with her. He does not blame her for the neglect and deprivation he experienced as a child. He only wishes the best for her and prays that she will overcome her addiction.

    V.   Criminal History Adjustment

The Pre-sentence report assigns three (3) criminal history points for a New York State robbery conviction that occurred in November of 2015 when Say-Quan was seventeen years old. The United States Sentencing Commission has voted an amendment to the guidelines that will become effective November 1, 2024. The amendment still gives points to qualifying juvenile convictions but encourages a downward departure and consideration of alternatives to incarceration whenever the offense conduct or conduct in the criminal history score was engaged in before the defendant's mid-20's.

The Honorable William F. Kuntz II
Page 4

The Commission's language is instructive:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid 20s and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance abuse, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risky seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation. U.S.S.G. section 5H1.1 Age (Policy Statement).

Say-Quan's traumatic childhood experiences, characterized by instability, insecurity, parental neglect and diminished educational opportunities have adversely affected every aspect of his life. In particular, his prolonged absences from school deprived him of the foundational academic and developmental milestones which early education provides. In light of these risk factors, we ask that the Court apply this amendment, and impose a non-guideline sentence.

   VI.   Factors Warranting a Non-Guideline Sentence

Say-Quan makes no excuses. He fully understands that his decisions have led him to this point in his life. However, there are strong and unmistakable indicators that Say-Quan is making progress toward fundamental rehabilitation.

On August 4, 2022, Say-Quan was accepted into The Ocean Corporation's Ultimate Diver Training Program. The program trains young people for a career as under-water welders. He was scheduled to relocate to Texas in order to begin the course on October 11, 2022. However, he was arrested on the instant charges thirteen days earlier, on September 28, 2022. Say-Quan had the courage and ambition to challenge himself by embarking on a journey to better himself. He has had to live with the anguish of defeat, having come so close to a dream and having that dream dry up like a raisin in the sun. To his credit, he is not bitter or angry.

The Honorable William F. Kuntz II
Page 5

This disappointment has made him stronger and more determined to change his life's arc.

The Pre-sentence report provides an additional example of Say-Quan's growth and maturity. Paragraph 28 of the report lists a host of disciplinary incidents from his custody in the State system. Tellingly, he has had no disciplinary incidents in the almost two years he has been held in federal detention. This demonstrates ongoing maturity and rehabilitation. PSR at 44.

Additionally, he is painfully and responsibly self-aware. As noted in the PSR at paragraph 47, he acknowledges feelings of angst and apprehension and has admitted to counsel similar issues that he is determined to squarely face, address and resolve.

The arrest, trial and conviction of Bishop Lamor Whitehead, one of the victims here, bears mention and consideration by the Court. Although the Bishop's crimes and conviction do not exonerate Say-Quan nevertheless they are factors which the Court may consider in fashioning a reasonable sentence that is not greater than necessary to achieve valid penological goals.

The government's publicly filed sentencing submission highlights the extent of Whitehead's conduct. It reads:

> Lamor Whitehead, the defendant is a career con man and liar who has been committing fraud for over 20 years to finance his extravagant lifestyle. On March 11, 2024, Whitehead was convicted, following a jury trial, of all 5 counts of indictment S1 22 CR. 692 (LGS) for defrauding a church parishioner, defrauding lenders, attempting to defraud a businessman, attempting to extort a businessman, and lying to federal agents.  In committing these crimes, the defendant abused his position of power and trust as a religious leader, lied about his finances, doctored numerous bank accounts, and threatened victims, among other things, in order to obtain over $7.2 million. Whitehead held himself out as a wealthy and successful "real estate investor," and "prophet," who, in actuality purchased his palatial home and an investment property through fraud and with fraud proceeds, reported annual incomes to the Internal Revenue Services (IRS) of between five thousand and thirteen thousand in tax years 2017 through 2019 and now claims he has only $181.54 in the bank. Government sentence letter at ii.

The Honorable William F. Kuntz II
Page 6

The most appalling aspect of Whitehead's conduct is not the fraudulent multimillion dollar bank fraud but the defrauding of his devoted parishioner, Pauline Anderson, of the $90,000.00 she earmarked for the purchase of a home. He swindled her out of the money with a promise to buy her a home but immediately began spending the money on high-end goods, including luxury car payments and travel. Government sentence letter at 8.

## VII. Conclusion

Despite living in poverty, unhoused and unprotected from the vagaries of his mother's addiction and his father's ongoing abandonment, singled out from his peers who regularly attended school and separated from his siblings, Say-Quan has persevered. He is not perfect but he has potential.

He acknowledges his offense conduct and has expressed remorse for his offense conduct. He is acutely aware that that but for his criminal conduct he was so close to turning the corner in his life and now must pay his debt before starting over. He is committed to a new start.

Despite the harsh childhood experiences over which he had no control and the grievous missteps for which he takes full responsibility, Say-Quan was well on his way to charting a new and different course. If given the chance, he can and will do it again.

Based on the foregoing, Your Honor should have no concerns that Say-Quan will reoffend. He is plainly on target to go forward, not backward.

Thank you for your consideration.

Respectfully submitted,

/s/Gary Villanueva

Gary Villanueva

Cc: A.U.S.A. Rebecca M. Schuman (By ECF and Email)
    Say-Quan Pollack (By Regular mail)