```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,                          :
                                                   :   ORDER
            v.                                     :   22-CR-428 (WFK)
                                                   :
SAY-QUAN POLLACK a/k/a                             :
SAY-QUAN POLLOCK,                                  :
                                                   :
                        Defendant.                 :
------------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge**: On November 14, 2023, Defendant Say-Quan Pollack pled guilty to Count Two of a three-count Indictment, charging him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Indictment ¶¶ 8-9, ECF No. 1; Plea Agreement ¶ 1, ECF No. 79. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 87 months of imprisonment followed by two years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00 and restitution in the amount of $402,639.00.

## I. Background

On July 24, 2022, Defendant and two co-defendants entered the Leaders of Tomorrow church in Brooklyn, New York, and interrupted church services. Presentence Investigation Report ("PSR") ¶¶ 4, 6, ECF No. 103. Defendant and his co-defendants proceeded to steal jewelry and personal items from Bishop Lamar Whitehead, the founder and lead pastor of the Leaders of Tomorrow, as well as from his wife, Asia Whitehead. *Id.* ¶¶ 5-6. Defendant brandished a firearm during the course of the robbery. *Id.* ¶ 6. In total, the jewelry and personal items stolen, which included necklaces, earrings, rings, a watch, and a cross, were worth $402,639.00. *Id.* Further, while Leaders of Tomorrow generally solicits donations through a cloud-based online payment system, Leaders of Tomorrow did not solicit donations on July 24, 2022 as a result of the robbery. *Id.* ¶¶ 4, 6.

On September 28, 2022, Defendant was arrested by agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *Id.* ¶ 7.

On September 21, 2022, the Government filed an Indictment charging Defendant with one count of Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a); one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and one count of possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(ii). Indictment, ECF No. 1. The Indictment included forfeiture allegations for all counts. *Id.* ¶¶ 12-15.

On November 14, 2023, Defendant pled guilty to Count Two of the Indictment, charging him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Indictment ¶¶ 8-9; Plea Agreement ¶ 1, ECF No. 79. Specifically, the Indictment charges Defendant with knowingly and intentionally obstructing, delaying, and affecting commerce, and the movement of articles and commodities in commerce, by the robbery of jewelry and personal items from two individuals during church services. Indictment ¶ 9. As part of his plea agreement, Defendant agreed not appeal or otherwise challenge his conviction or sentence if the Court imposes a term of imprisonment at or below 87 months. Plea Agreement ¶ 4.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id*.

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

Defendant was born on September 3, 1998, in Brooklyn, New York, to Guwan Chandler and Tyjuana Pollack. PSR ¶ 36. Defendant has one full sibling, four maternal half-siblings, and 14 paternal half-siblings. *Id*. ¶¶ 37-38. Defendant's father, Mr. Chandler, had no involvement in his son's life, *id*. ¶ 36, leaving Defendant to be raised by his mother and maternal grandmother in a poor household in the Bedford-Stuyvesant neighborhood of Brooklyn, *id*. ¶¶ 39-40. Defendant's childhood was marked by instability and financial difficulties. *Id*. ¶¶ 39-41. Defendant's mother, who suffers from alcohol addiction, relied on government assistance programs. *Id*. ¶ 39. Due to his mother's financial problems, Defendant and his family were at times evicted from their home and forced to reside in temporary shelters, making it difficult for Defendant to regularly attend school. *Id*.

3

When Defendant was 11 years old, he and his siblings were placed in foster care as a result of their poor school attendance and their mother's struggle with addiction. *Id.* ¶ 40. Defendant reported never feeling loved by the foster families he was placed with, until he was ultimately placed in the care of Constance Holmes when he was 14 years old. *Id.; see also* ECF No. 116-1. Ms. Holmes, with whom Defendant lived until he aged out of foster care, developed a close and supportive relationship with Defendant while he was in her care. *Id.* She is aware of the instant prosecution and remains supportive. *Id.*

Defendant is not married and does not have any children. *Id.* ¶ 42.

2. Educational and Employment History

Defendant attended Eagle Academy for Young Men at Ocean Hill in Brooklyn, New York between November of 2015 and October of 2016. *Id.* ¶ 52. He reported leaving Eagle Academy after his state conviction for robbery in 2016. *Id.* Defendant reported receiving his Graduate Equivalency Diploma ("GED") in 2019 or 2020 while in state custody. *Id.* ¶ 51.

While Defendant has been in custody for the instant offense since September of 2022, he reported sporadic periods of employment prior to his arrest. *Id.* ¶¶ 53-55. In particular, Defendant reported working for less than six months at Shop Rite Warehouse in the Bronx, New York between 2021 and 2022 and at a Clean Rite Laundry in Brooklyn, New York in 2020. *Id.* ¶¶ 53-54. In addition to those two jobs, Defendant reported helping with odd jobs around his neighborhood such as moving and renovations. *Id.* ¶ 55.

3. Prior Convictions

Defendant has two prior adult criminal convictions, *Id.* ¶¶ 28-29, and one pending state court charge, *Id.* ¶ 33. His first conviction in 2015 stemmed from his involvement in six violent robberies. *Id.* ¶ 28. In 2020, just months after being paroled following the five-year sentence for

4

that robbery conviction, Defendant was arrested for possession of a forged instrument. *Id.* ¶ 29. He was convicted in 2021 but has yet to be sentenced. *Id.* A bench warrant was issued for Defendant's arrest in August 2021. *Id.* Defendant was also arrested in 2021 for marijuana possession. *Id.* ¶ 33. A bench warrant was issued for Defendant in connection with that offense in September 2021 after he failed to appear in Court. *Id.* The warrant remains active. *Id.*

4. Physical and Mental Health

Defendant is physically healthy. PSR ¶ 46. While he was hit by a car when he was 12 years old, he suffered only minor bruises and swelling. *Id.*

As for mental health, while Defendant has never been formally diagnosed with any mental health conditions, he reported suffering from anxiety. *Id.* ¶ 47. Defendant's foster mother also indicated that Defendant suffered from attention-deficit/hyperactivity disorder (ADHD), but was never prescribed medication. *Id.* ¶ 48.

5. Substance Abuse

Defendant has used marijuana since he was 13 years old, but otherwise reported no substance use. *Id.* ¶ 49. While Defendant has tried alcohol, he reported despising the substance due to his mother's addiction. *Id.*

6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved robbing a pastor and his wife in the middle of church services, and, in so doing, brandishing a firearm and putting the lives of those present at the service at risk. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count Two of the Indictment, charging him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). This offense carries a maximum term of imprisonment of 20 years and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Defendant faces a maximum of three years of supervised release and no minimum term of supervised release. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 18 U.S.C. § 3583(e). Defendant is eligible for a term of probation of not less than one nor more than five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, one of the following must be imposed as a condition of probation: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2). Defendant faces a maximum fine in the amount of $250,000.00, 18 U.S.C. § 3571(b)(3), as well as a mandatory special assessment of $100.00 per count, 18 U.S.C. § 3013. Finally, restitution is required

pursuant to 18 U.S.C. § 3663A. While the victims had not returned their affidavits of loss as of the PSR's filing, PSR ¶ 12, both the Government and Probation recommend the Court impose restitution in the amount of $402,639.00. Probation Recommendation at 2, ECF No. 103-1; Government Memorandum ("Gov't Mem.") at 8, ECF No. 117; *see also* PSR ¶¶ 11-12.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 18 U.S.C. § 1951(a), as contained in Count Two of the Indictment, is U.S.S.G. §2B3.1(a). U.S.S.G. §2B3.1(a) provides for a base offense level of 20. Because Defendant brandished a firearm during the commission of the offense, an additional five levels are added pursuant to U.S.S.G. §2B3.1(b)(2)(C). Because the loss amount is more than $95,000.00 but less than $500,000.00, an additional two levels are added pursuant to §2B3.1(b)(7)(C). Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. This brings Defendant's total adjusted offense level to 24. All parties agree with these calculations. Defense Sentencing Memorandum ("Def. Mem") at 2, ECF No. 116; Gov't Mem. at 5; PSR ¶¶ 16-26; *see also* Plea Agreement ¶ 2.

As noted previously, Defendant has two prior adult convictions. *See supra* Part I. Defendant's prior convictions result in a criminal history score of four. U.S.S.G. §§4A1.1, 4A1.2; PSR ¶ 30. This results in a criminal history category of III. U.S.S.G. §5A. A total adjusted offense level of 24 and a criminal history category of III result in a Guidelines imprisonment range of between 63 and 78 months. U.S.S.G. §5A. All parties agree with this calculation. PSR ¶ 60; Def. Mem. at 2; Gov't Mem. at 5.

7

That said, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a bottom-of-the-Guidelines sentence of 63 months of custody followed by two years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 103-1. Probation also recommends restitution in the amount of $402,639.00, due immediately and payable at a rate of $25.00 per quarter while in custody, and at a rate of 10% of gross monthly income while on supervised release. *Id.* Finally, Probation recommends payment of the $100.00 special assessment. *Id.* at 2. Probation does not recommend the Court impose a fine, as Defendant appears unable to pay. *Id.* at 2.

Probation argues a sentence of 63 months is warranted because of the nature of the offense: Defendant and two co-Defendants participated in an armed robbery during a church service, in the presence of parishioners. *Id.* at 3. While Probation acknowledges Defendant's difficult upbringing, Probation maintains specific deterrence is of particular importance in Defendant's case in light of his prior armed robbery conviction and resulting five-year custodial sentence. *Id.* at 2-3.

Defense counsel requests a downward variance/departure from the Guidelines. Def. Mem. at 1. Defense counsel argues a sentence below the Guidelines range is warranted because of Defendant's difficult upbringing and his demonstrated commitment to rehabilitation. Def. Mem. at 2-6.

Defense counsel notes Defendant's life began "in deprivation and neglect," with a mother who was addicted to alcohol and a father who abandoned him as a child. *Id.* at 2. Defense counsel asserts Defendant's childhood "was characterized by instability, insecurity, parental neglect and diminished educational opportunities" and notes that "his prolonged absences from school deprived him of the foundational academic and developmental milestones which early

8

education provides." *Id.* at 4. Defense counsel, citing a proposed amendment to U.S.S.G. §5H1.1, suggests a downward departure is warranted because Defendant was only 17 at the time he committed the offense that formed the basis for three of his four criminal history points. *Id.* at 3-4.

Defense counsel also urges the Court to consider Defendant's commitment to "fundamental rehabilitation," contrasting the abundance of disciplinary incidents Defendant faced while incarcerated on his state charges with the absence of any incidents while in custody for this offense. *Id.* at 5. Defense counsel also highlights Defendant's acceptance into the Ocean Corporation's Ultimate Diver Training Program, which "trains young people for a career as under-water welders," shortly before his arrest. *Id.* at 4; *see also* ECF No. 116-2. While Defendant was unable to attend this program, defense counsel notes he "is committed to a new start" and is "well on his way to charting a new and different course." *Id.* at 6.

Defense counsel also notes that one of Defendant's victim's, Bishop Lamor Whitehead, was convicted earlier this year of defrauding a church parishioner, defrauding lenders, attempting to defraud a businessman, attempting to extort a businessman, and lying to federal agents. *Id.* at 5. Defense counsel suggests that, while "the Bishop's crimes and conviction do not exonerate Say-Quan nevertheless they are factors which the Court may consider in fashioning a reasonable sentence." *Id.*

The Court has read and considered the letters submitted by Defendant's loved ones. ECF Nos. 116-2, 118. The letter from Defendant's foster mother, Constance Holmes, describes Defendant as a "resourceful, competent, warm and loving" man who is committed to making the best of his life. ECF No. 116-2. The Court appreciates what Defendant's advocates have said on his behalf.

9

The Government recommends an above-Guidelines sentence of 87 months, a term of supervised release, and restitution in the amount of $402,639.00. Gov't Mem. at 9. In arguing for an upward variance, the Government points to (1) the seriousness of the instant offense, (2) Defendant's prior conviction for armed robbery, and (3) Defendant's problematic behavior while in custody for the instant offense. *Id.* at 5-8.

As to the seriousness of the instant offense, the Government notes Defendant "committed a violent, brazen robbery in a place of worship where individuals had come to pray, seek solace, and find peace." *Id.* at 5. The Government emphasizes the fact that Defendant personally brandished a gun and "shoved it in the face of one of the victims." *Id.* The Government also argues Defendant's actions endangered the lives of others: "Although no one was physically hurt during the robbery, that was by no means guaranteed, as armed robberies can and often do lead to serious bodily injuries." *Id.*

The Government contends Defendant's prior convictions suggest the instant offense "is by no means an aberration." *Id.* at 6. The Government explains Defendant was convicted of armed robbery in 2015 after committing "a spree of <u>six</u> violent robberies in the span of mere weeks." *Id.* The Government rejects defense counsel's contention that Defendant's age at the time of that earlier crime should be considered as a ground for a downward departure or variance, arguing instead that the Guidelines themselves caution against such consideration except in unusual or extraordinary circumstances. *Id.* at 7 (citing U.S.S.G. §5H1.1).

Finally, the Government discusses Defendant's conduct while in custody for the current offense, specifically detailing threats he made to a correctional officer. *Id.*

Altogether, the Government argues, "these facts demonstrate a strong risk of recidivism and a lack of remorse for his conduct." *Id.* (quoting *United States v. Dacy*, 301 F. App'x 45, 46

(2d Cir. 2008)) (cleaned up). The Government also writes the Defendant's "claim of remorse conveniently appears for the first time at the time of sentencing" and notes Defendant "notably provides no apology to the victims of his crimes in his submissions to the Court." *Id*.

For all of these reasons, the Government suggests an upward variance and a sentence of 87 months is appropriate.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel asks the Court to consider the Proposed Amendment to U.S.S.G. §5H1.1 (Policy Statement) as grounds for a downward departure. Def. Mem. at 4. The Sentencing Commission has specified an effective date of November 1, 2024 for the Proposed Amendment. *See* U.S. SENT'G GUIDELINES MANUAL §5H1.1 (Preliminary Amendment to Policy Statement). The Proposed Amendment reads, in pertinent part, as follows:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

Defense counsel notes Defendant was 17 at the time of one of the prior convictions that affected his criminal history score. Def. Mem. at 3. Given the proposed amendment, defense counsel argues a downward departure is warranted based on Defendant's age at the time of that

11

conviction. *Id*. at 3-4. For the reasons stated above, the Government disagrees that a downward departure based on age is warranted.

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. Both Probation and the Government recommend restitution in the amount of $402,639.00, although Probation notes victims have not yet provided an affidavit of loss. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine any additional amounts owed to Defendant's victims.

## IV. CONCLUSION

And finally, the Court has this to say. Defense counsel cites the criminal conviction of the bishop as justification for reducing the sentence the Court imposes on this Defendant. The record reveals this Defendant was not some modern-day Robin Hood taking from the rich equivalent of the Sheriff of Nottingham to help the poor. No. The record reveals this Defendant

12

was simply a modern-day Robbing Hood motivated by nothing more than greed. He and his masked, armed colleagues stormed a sacred place of worship, terrifying the innocent men, women, and children at prayer. Throughout our history, people of all faiths have gathered in church, synagogue, mosque, and temple to exercise our constitutionally protected right to worship in freedom and in safety. Defendant asks the Court to lighten his sentence because of the crimes of the bishop, in effect minimizing the terror he and his colleagues imposed on the innocent members of the parish. This Judge, like all federal judges, took a solemn oath to support and defend the constitution of the United States of America against all enemies, foreign and domestic. Few crimes present a greater threat to our constitution than the crimes committed by this Defendant. The crimes of the bishop do not justify the crimes of this Defendant. With all due respect: robbing a hood does not make you a Robin Hood. Not in this court, and not on my watch.

For the reasons set forth above, the Court imposes a sentence of 87 months of imprisonment to be followed by two years of supervised release with both standard and special conditions. The Court also orders a $100.00 mandatory special assessment. Finally, the Court orders restitution in the amount of $402,639.00, with the payment schedule suggested by the Probation Department in its sentencing recommendation. Probation Recommendation at 1. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 103, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion and imposes the standard and special conditions of release proposed by the Probation Department.

13

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 12, 2024
Brooklyn, New York

14